IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VERONICA NOLAN,**<br>                **Plaintiff,**<br><br>v.<br><br>**TALENTBURST, INC.,**<br>**THE VANGUARD GROUP, INC.,**<br>**RANDSTAD USA, and**<br>**INFOSYS LIMITED,**<br>                **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  22-4556 |

<u>MEMORANDUM</u>

**HODGE, J.**                                                                                                     **March 29, 2024**

      Presently before the Court are four Motions to Dismiss filed by Defendant Infosys Limited ("Infosys") (ECF No. 14), Defendant The Vanguard Group, Inc. ("Vanguard") (ECF No. 15), Defendant Randstad ("Randstad") (ECF No. 24), and Defendant TalentBurst, Inc. ("TalentBurst") (ECF No. 27). Each Motion to Dismiss was fully briefed and is ripe for review. For the reasons set forth below, the Court grants Defendants Infosys and Randstad's motions to dismiss and denies Defendants Vanguard and TalentBurst's motions to dismiss.

**I.     BACKGROUND**[1]

      Plaintiff is an adult individual, residing in Akron, Pennsylvania. (ECF No. 1 at 2 ¶ 2.) Defendant Infosys is an "information technology company that provides consulting, information technology and outsourcing services" with a corporate headquarters located in Plano, Texas. (*Id.* ¶ 6.) Defendant Vanguard "is an investment management company" with a location in Malvern, Pennsylvania. (*Id.* ¶ 4.) Defendant Randstad "is a staffing company" with a headquarters located

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

in Atlanta, Georgia. (*Id.* ¶ 5.) Defendant TalentBurst "is a provider of workforce management solutions" with a corporate headquarters in Natick, Massachusetts. (*Id.* ¶ 3.)

On October 19, 2020, Defendants hired Plaintiff to work as a Retirement Planning Specialist ("RPS-1") with an open-ended contract that was a remote work contract expected to end on April 19, 2021—but with the potential to extend the contract. (*Id.* at 4 ¶ 23, 5 ¶¶ 31–33.) Plaintiff alleges that TalentBurst was her direct employer. (*Id.* at 5 ¶ 27.) Specifically, Plaintiff avers that the reporting structure between Defendants was that "Plaintiff reported to Defendant TalentBurst, Defendant TalentBurst reported to Defendant Randstad, and Defendant Randstad report[ed] to Defendant Vanguard. At no point was Defendant TalentBurst supposed to communicate directly with Defendant Vanguard." (*Id.* ¶ 28–29.) Regarding Infosys, Plaintiff alleges that "Defendant Infosys contracted Randstad to procure employees for Defendant Vanguard." (*Id.* at 4 ¶ 26.)

Plaintiff pleads that she has the following disabilities: "permanent nerve damage, muscle spasms, migraines, and a severe delayed T-Cell reaction that manifests itself in spontaneous allergies, such as the ingredients in vaccines, including the COVID-19 vaccine." (*Id.* ¶ 34.) Plaintiff's disabilities affect her major life activities such as "performing manual tasks, concentrating, sleeping, working[,] . . . functions of the immune system," and driving. (*Id.* ¶¶ 35, 37.) Plaintiff avers that Defendant TalentBurst was aware of her disabilities as it had ADA paperwork from Plaintiff's physician, and Plaintiff kept Defendant TalentBurst aware of all pertinent updates from her physicians. (*Id.* ¶ 36.)

Plaintiff's disabilities forced her to take a medical leave of absence in February 2021 to treat and manage her disabilities. (*Id.* at 6 ¶ 38.) Plaintiff returned from her medical leave of absence in May 2021. (*Id.* ¶ 39.) "Throughout Plaintiff's leave, she maintained contact with Heather Hammond, Defendant TalentBurst's Director of Human Resources, North America." (*Id.*

¶ 40.) Plaintiff attempted to return to work full-time in May 2021 but had not yet fully recovered. (*Id.* ¶ 41.) Plaintiff then requested to work part-time as a temporary reasonable accommodation while she continued to recover. (*Id.* ¶ 42.) This accommodation was denied, which ultimately required Plaintiff to return to a medical leave of absence. (*Id.* ¶ 43.)

In the summer of 2021, which was beyond Plaintiff's anticipated end date of her contract, Plaintiff alleges that Defendants asked Plaintiff, while she remained on medical leave, if she would be willing to work in Defendant Vanguard's Malvern, PA office. (*Id.* ¶ 44.) Plaintiff refused this request as her contract was for remote work, and her disabilities prevented her from being able to drive and commute. (*Id.* ¶ 45.)

Plaintiff was cleared to return to work on November 8, 2021. (*Id.* at 7 ¶ 48.) When she attempted to log onto her work laptop, Plaintiff found herself locked out. (*Id.* ¶ 49.) Plaintiff contacted Defendant TalentBurst about the issue, and Defendant TalentBurst told Plaintiff she needed a new background check due to the length of her medical leave of absence. (*Id.* ¶ 50.) On December 16, 2021, Defendant TalentBurst informed Plaintiff she would need to drive to Malvern, PA to swap her laptop in order to regain full access to the system required to perform her work. (*Id.* ¶ 51.) Plaintiff informed Ms. Hamond she could not do so as her disabilities prevented her from being able to drive. (*Id.* ¶ 52.)

Allegedly, in light of this inability to drive and Defendant Infosys's policies related to mandatory vaccination for COVID-19, TalentBurst informed Plaintiff that her contract would be terminated on December 31, 2021. (*Id.* ¶ 53.) Infosys required all employees to be vaccinated against COVID-19 without exception, a policy which also applied to Plaintiff by terms of her contract. (*Id.*) Plaintiff's disabilities prevented her from being able to be vaccinated for COVID-

3

19; a fact that Plaintiff alleges Defendants were aware of either actually or constructively, due to Plaintiff's communications with TalentBurst. (*Id.* ¶ 54.)

Plaintiff's contract officially terminated on January 11, 2022. (*Id.* at 8 ¶ 57.) After terminating her fully remote contract in January 2022, Plaintiff avers that "TalentBurst informed Plaintiff that Defendant Vanguard would offer her a new contract if she agreed to a hybrid work schedule, where she would be tested for COVID-19 frequently instead of getting vaccinated." (*Id.* ¶ 55.) Plaintiff could not accept this contract offer as she was unable to commit to driving for her commute. (*Id.* ¶ 56.)

Plaintiff first filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission on February 17, 2022, alleging retaliation and disability-based discrimination. (*See* ECF No. 22-2 at 2–3.) Plaintiff filed an Amended Charge of Discrimination ("Amended Charge") on May 11, 2022, alleging the same discrimination in her initial Charge and adding Infosys and Randstad as additional respondents. (*See id.* at 5–6.) Plaintiff's Charge and Amended Charge were both dual-filed with the Pennsylvania Human Relations Commission. (*See id.* at 2, 5.) Plaintiff filed her Complaint on November 14, 2022, alleging retaliation and disability-based discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Each Defendant filed a Motion to Dismiss (*see* ECF Nos. 14–15, 24, 27), which were fully briefed and are ripe for review.

## II. LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint must provide merely a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's ADA and PHRA claims. Defendant Infosys argues that Plaintiff failed to exhaust her administrative remedies and does not allege an employment relationship with Infosys. (*See* ECF No. 14-1 at 5.) Defendant Vanguard argues that Plaintiff does not allege an employment relationship with it either. (*See* ECF No. 15-1 at 4.) Defendant Randstad argues that (1) Plaintiff failed to timely file her Complaint, (2) she failed to exhaust her administrative remedies, and (3) she does not allege an employment relationship with Randstad. (*See* ECF No. 24-1 at 2.) Defendant TalentBurst argues that Plaintiff has not sufficiently alleged claims for (1) disability-based discrimination, (2) failure to accommodate, or (3) retaliation. (*See* ECF No. 27-1 at 2.) The Court addresses each of Defendants' contentions below.

### A.     Plaintiff's Complaint was timely filed.

Defendant Randstad argues that Plaintiff's Complaint should "be dismissed with prejudice as time barred" because she failed to timely file her Complaint "within the 90-day time period, and instead [] filed one day late on November 14, 2022." (ECF No. 24-1 at 5–6.) An individual alleging violation of the ADA in a civil action must bring the civil action within 90 days of the dismissal of the charge of discrimination by the EEOC. *See Ebbert v. Daimlerchrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003). Under Federal Rule of Civil Procedure 6, when the time for filing is stated in days or a longer unit of time and the last day is a Saturday, Sunday, or legal holiday, the period will continue to run until the end of the next day that is not a Saturday, Sunday or legal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C). The Third Circuit applies Rule 6 to the 90-day time period for filing following dismissal of a charge from the EEOC. *See, e.g.*, *Lewis v. Postmaster Gen. of United States*, No. 21-2958, 2022 WL 109007, at *1, 1 n.3 (3d Cir. Jan. 12, 2022) (finding that as the 90-day timeline in this case ended on Sunday, December 6, 2020, that the plaintiff had until Monday, December 7, 2020 to file the complaint). In this matter, Plaintiff received her right to sue on or about August 15, 2022; ninety days after August 15, 2022 was November 13, 2022, which was a Sunday. Thus, under Rule 6, Plaintiff had until Monday, November 14, 2022, to file her complaint, which she did. Therefore, the Court finds that Plaintiff's Complaint was timely filed.

### B.     Plaintiff exhausted her administrative remedies.

Defendants Infosys and Randstad argue that they should be dismissed from the instant action because Plaintiff failed to exhaust her administrative remedies relative to them. (ECF No. 14-1 at 8–9; ECF No. 24-1 at 6–8.) Specifically, Defendant Infosys argues that Plaintiff's "Charge of Discrimination lists only TalentBurst and Vanguard. . . . Infosys is not a named employer and the mere mention of a party is not sufficient for notice that it later will be added as a co-defendant

in the action." (ECF No. 14-1 at 9 (citing *Cella v. Villanova Univ.*, No. 01-cv-7181, 2003 WL 329147, at *9 (E.D. Pa. Feb. 12, 2003), aff'd, 113 F. App'x 454 (3d Cir. 2004)).) Defendant Randstad argues the same. (*See* ECF No. 24-1 at 7–8 ("Here as in *Cella*, supra 'there is no evidence that any attorney, any human resources representative, or any individual with the authority [from Defendant Randstad] to appropriately direct the investigation of such a complaint was aware of the charge' prior to the instant filing.").) Defendant Randstad further emphasizes that the Dismissal, Notice of Rights, and Notice of Amended Charge of Discrimination were only sent to attorneys for Defendants Infosys and Vanguard. (*See id.* at 8.) Defendant Randstad also argues that Plaintiff's PHRA claims against it have not been with the Pennsylvania Human Relations Commission for one year.[2]

Plaintiff counters that Defendant Infosys was identified as an additional respondent in Plaintiff's Amended Charge, and as such, it was sufficiently named and Plaintiff exhausted her administrative remedies as to Infosys. (ECF No. 22-1 at 8–9; ECF No. 22-2.) Plaintiff fails to address Randstad's argument in her response in opposition, but the Court recognizes that Plaintiff also identified Randstad as an additional respondent in her Amended Charge in the same manner as she did with Infosys. (*See* ECF No. 22-2 at 5.)

The Court finds that Plaintiff exhausted her administrative remedies as to Defendants Infosys and Randstad. The case cited by Defendants Infosys and Randstad is inapposite to the facts here. In *Cella v. Villanova Univ.*, the plaintiff argued that "his claim against Aramark naturally [grew] out of his initial charge and that he should be permitted to add Aramark as a respondent"

---

[2] However, at this point, time has cured the defect and the one-year deadline has long since passed. Therefore, Defendant Randstad's exhaustion argument on these grounds is moot. *See Joseph v. Pepperidge Farm Inc.*, No. CV 22-4049, 2024 WL 921416, at *8 (E.D. Pa. Mar. 4, 2024) (citing cases).

because he referenced Ms. Mosley, an Aramark employee, multiple times in his original administrative complaint. No. CIV.A. 01-7181, 2003 WL 329147, at *8 (E.D. Pa. Feb. 12, 2003), aff'd, 113 F. App'x 454 (3d Cir. 2004). The *Cella* Court found that the plaintiff could not add Aramark as a defendant because the references to Ms. Mosley were insufficient to put Aramark on notice that it was a respondent in the original administrative charge. *See id.* at *9. In this matter, Plaintiff complied with the instructions on the Charge of Discrimination form. In the section to identify the employer, labor organization, employment agency, etc. that the plaintiff believes discriminated against them, the form specifically states, "If more than two, list under PARTICULARS below." (ECF No. 22-2.) Plaintiff identified "additional Respondent Randstad" and "additional Respondent InfoSys Limited" in the PARTICULARS section as instructed on the form, providing the required information such as the number of employees, phone number, and address. (*Id.* at 5.) The Court finds this compliance was sufficient for Plaintiff to have exhausted her administrative remedies.

   **C.**  **Plaintiff sufficiently alleged an employment relationship with Vanguard but not with Infosys or Randstad.**

  The ADA applies only to covered entities, i.e., employers, employment agencies, and labor organizations. 42 U.S.C. §§ 12112(a), 12111(2). The statute defines an "employee" as "an individual employed by an employer." Id. § 12111(4). Therefore, courts in the Third Circuit have held that the ADA does not cover independent contractors. *See, e.g.*, *Itiowe v. NBCUniversal Inc.*, No. 13-cv-04155, 2013 WL 5435487, at *3 (D.N.J. Sept. 27, 2013) (holding Title I of the ADA "does not allow an independent contractor to bring a claim"), aff'd sub nom. *Itiowe v. NBC Universal Inc.*, 556 F. App'x 126 (3d Cir. 2014). The PHRA similarly prohibits employers from discriminating against employees and certain types of independent contractors because of certain protected classes. 43 P.S. § 954-55 (2010). Thus, to sustain her claims under the ADA or PHRA,

Plaintiff must allege the existence of an employment relationship between her and Defendants—either as a direct employer or as a joint employer. *See Washington v. ABM Janitorial Servs.*, No. 11-cv-6462, 2013 WL 6047494, at *4 (E.D. Pa. Nov. 15, 2013).

Defendants Infosys, Vanguard, and Randstad argue that Plaintiff cannot establish that they were her direct or joint employer, and as such, they should be dismissed from this litigation. (ECF No. 14-1 at 10–12; ECF No. 15-1 at 7–10; ECF No. 24-1 at 11.) Plaintiff clearly alleges that "Defendant TalentBurst was Plaintiff's direct employer" and that her "contract" was with TalentBurst. (ECF No. 1 at 5 ¶ 27.) Therefore, the Court will focus its analysis on whether Plaintiff has sufficiently alleged that Defendants Infosys, Vanguard, and/or Randstad are joint employers with Defendant TalentBurst.

Each party relies on *Covington v. Int'l Ass'n of Approved Basketball Offs.* to support their position, so the Court will examine this case in depth. 710 F.3d 114 (3d Cir. 2013). In *Covington*, the plaintiff, a female basketball referee excluded from refereeing boys' high school varsity games, named several parties as the defendants, alleging that the Hamilton Township School District ("Hamilton"), the Colonial Valley Conference ("CVC"), and the New Jersey State Interscholastic Athletic Association ("NJSIAA") were "liable under Title VII as her employers;" "Board 193 [was] liable as an employment agency;" NJSIAA and the International Association of Approved Basketball Officials ("IAABO") were "vicariously liable as Board 193's principals;" and CVC was "vicariously liable as Hamilton's principal." *Id.* at 117. The district court held "that Covington had not adequately alleged facts sufficient to establish an employer-employee or other relationship necessary to hold defendants liable under Title VII," and further declined supplemental jurisdiction over the state law claims. *Id.* When analyzing whether Covington alleged an employment relationship with the defendants under Title VII, the Third Circuit focused on "the level of control

the defendant[s] . . . exerted over the plaintiff: which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Id.* at 119 (internal citations omitted). The Third Circuit concluded that Covington had alleged sufficient facts to survive a motion to dismiss regarding whether Hamilton and NJSIAA were "employers" because both entities paid her, assigned the time and locations of basketball games, and assigned the referees to the games. *See id.* at 119. In contrast, the Third Circuit affirmed the dismissal of the complaint against the other defendants where the plaintiff failed to allege a similar employment relationship. *See id.* at 119–20 ("CVC does not pay officials and does not contribute to their training or evaluation."). "In summary, Covington [] plausibly alleged an employment relationship with Hamilton for regular season games, with NJSIAA for post-season games, and with Board 193 as an employment agency." *Id.* However, regarding the plaintiff's vicarious liability claims, the Third Circuit held that the plaintiff did not allege sufficient facts to support that IAABO was a principal of Board 193, CVC was a principal over Hamilton, nor that NJSIAA was vicariously liable for Board 193's actions. *See id.* at 120.

Overall, in the Third Circuit, independent entities will be considered joint employers where "both employers exert significant control over the same employees with evidence demonstrating that they share or co-determine those matters governing essential terms and conditions of employment." *Abdallah v. Allegheny Valley Sch.*, No. 10-cv-5054, 2011 WL 344079, at *3 (E.D. Pa. Feb. 1, 2011) (citing *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)). When determining whether an entity exercises significant control with another employer, district courts in the Third Circuit have assessed the following factors: "(1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) its day-to-day supervision of

employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204–05 (3d Cir. 2014). "However, '[s]ince the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)).

The Court will now assess each defendant individually. Specific to Vanguard, Plaintiff alleges in her Complaint that (1) "Vanguard contracted employees through Defendant Randstad," (ECF No. 1 at 4 ¶ 24); (2) "Vanguard [worked] with Defendant Infosys to make policies and procedures that Plaintiff was subjected to," (*Id.* ¶ 25; *see also id.* at 5 ¶ 30); (3) Plaintiff was asked to "work in [] Vanguard's office in Malvern, PA," (*Id.* at 6 ¶ 44); and (4) Vanguard would have offered Plaintiff a new contract if she agreed to a hybrid work schedule, where she would be tested for COVID-19 frequently instead of getting vaccinated." (*Id.* at 8 ¶ 55.) Plaintiff further alleges that the computer she worked on belonged to Vanguard, and Vanguard could restrict or grant access to the computer. Plaintiff worked as a Retirement Planning Specialist, and Vanguard is an investment management company. (*See id.* at 2 ¶ 4, 4 ¶ 23.) As such, the Court accepts Plaintiff's argument that "[i]t can be inferred from the Complaint that Plaintiff did not have the right to choose assignments to work on. . . . Defendant Vanguard controlled the manner and means by which the product was accomplished." (ECF No. 23-1 at 10.) Based on these allegations, it appears that Vanguard had a role in the hiring and firing of Plaintiff because Vanguard had the ability to offer Plaintiff a new contract. Further, it appears that Vanguard controlled the location of where Plaintiff worked, whether that was fully remote, hybrid, and in which office. Also, the Court finds it plausible that Vanguard controlled her daily employment activities like her work assignments.

Plaintiff does not include any allegations regarding whether Vanguard paid her salary, but no one factor is decisive in the test applied by the courts. As such, the Court holds that Vanguard may fairly be identified as Plaintiff's employer, and the Court denies Vanguard's motion to dismiss.

Specific to Infosys, Plaintiff alleges in her Complaint that (1) Infosys worked with Defendant Vanguard "to make policies and procedures that Plaintiff was subjected to," (ECF No. 1 at 4 ¶ 25); (2) "Infosys contracted with Randstad to procure employees for [] Vanguard," (*Id.* ¶ 26); and (3) it was Infosys's policy that "requir[ed] all employees to be vaccinated against COVID-19, with no exceptions." (*Id.* at 7 ¶ 53.) In her response in opposition, Plaintiff further alleges that "Infosys controlled the manner and means by which she performed the work by allowing and restricting access to Defendant Vanguard's network" and "access to the computer Plaintiff used was restricted or granted by Defendant Infosys." (ECF No. 22-1 at 12.) Accepting all allegations as true, even the allegations that Plaintiff asserts in her response in opposition, the Court agrees with Infosys that "Plaintiff's allegations are woefully inadequate to suggest that Infosys was exhibiting significant control over the essential terms and conditions of her employment. Because Plaintiff does not allege that Infosys jointly employed her (which in good faith she could not do), Plaintiff cannot sustain her alleged violations of the ADA and PHRA." (ECF No. 14-1 at 12.) Therefore, the Court grants Infosys's motion to dismiss.

Specific to Randstad, Plaintiff alleges in her Complaint that (1) "Defendant Infosys contracted Randstad to procure employees for Defendant Vanguard," (ECF No. 1 at 4 ¶ 26); (2) Defendant Randstad "contracted Defendant TalentBurst to hire employees," (*Id.* at 5 ¶ 27); (3) "Plaintiff reported to Defendant TalentBurst, Defendant TalentBurst reported to Defendant Randstad, and Defendant Randstad reports to Defendant Vanguard," (*Id.* ¶ 28); and (4) "Defendant Vanguard sets the policies that Plaintiff adhered to, and Defendant Randstad and Defendant

TalentBurst were responsible for enforcing them." (*Id.* ¶ 30.) In her response in opposition to Randstad's motion, Plaintiff emphasizes a potential agency relationship only. (*See* ECF No. 31-1 at 10–13.) As such, the Court agrees that "Randstad (1) is not alleged to have hired Plaintiff; (2) is not alleged to have fired Plaintiff; (3) is not alleged to promulgate work rules and assignments; and (4) is not alleged set conditions of employment, including compensation, benefits, and hours." (ECF No. 33 at 6.) Therefore, the Court grants Randstad's motion to dismiss.

Plaintiff further argues Defendants share liability for alleged discrimination under an agency relationship theory. Specifically, Plaintiff alleges that "[i]t may be inferred from the Complaint that Defendants Infosys, Randstad, and TalentBurst all acted as agents for the entity above to procure employees for Defendant Vanguard with authority given to them by Defendant Vanguard to hire and fire employees." (ECF No. 22-1 at 11; ECF No. 23-1 at 7, 9 ("In this case, Defendant Vanguard served as the principal with Defendants Infosys, Randstad, and TalentBurst serving as its agents."); ECF No. 31-1 at 12.) The Court agrees with Defendants Infosys, Vanguard, Randstad that Plaintiff has not sufficiently alleged a vicarious liability theory. In *Covington*, the plaintiff specifically raised a vicarious liability theory as to multiple defendants in her amended complaint. *Covington v. International Association of Approved Basketball Officials Board 193 et al*, No. 3:08-cv-03639, ECF No. 103 (D.N.J. Sept. 25, 2010). The distinction between vicarious liability through an agency relationship and liability as a joint employer is more than a semantic difference. They are separate legal theories that Plaintiff must allege in her Complaint, and she has not done so. As such, the Court finds that Plaintiff has not alleged that Infosys, Vanguard, and/or Randstad are vicariously liable for Defendant TalentBurst's actions.

At this time, the Court denies Plaintiff's request for leave to file an amended complaint. This matter involves complicated contractual relationships. The Third Circuit has long established

13

that fact discovery is needed to prove the existence of a joint-employer relationship. *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997) ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry."). Currently, Plaintiff has failed to sufficiently allege claims against Infosys and Randstad. As such, the Court will dismiss Infosys and Randstad without prejudice. However, if discovery reveals information that Infosys and Randstad may be liable as joint employers or vicariously liable through an agency relationship, then Plaintiff may seek leave from the Court to file an amended complaint to re-assert Infosys and/or Randstad as defendants.

### D. Plaintiff has sufficiently alleged ADA and PHRA claims.

Defendant TalentBurst argues that Plaintiff's ADA and PHRA claims[3] fail on three grounds: (1) there is no reasonable inference of disability-based discrimination because there are insufficient facts alleged to show a plausible causal connection between Plaintiff's alleged disability and an adverse employment action, (2) there is no failure to accommodate claim because TalentBurst engaged in an interactive process with Plaintiff, and (3) there is no inference of retaliation because there are insufficient facts to suggest that TalentBurst subjected Plaintiff to any adverse employment action as a result of an alleged disability. The Court addresses each of the TalentBurst's assertions below.

#### 1. Disability Discrimination Claim

To plead a prima facie case of disability discrimination under the ADA, Plaintiff must show that she is "(1) disabled within the meaning of the ADA, (2) can perform the essential functions

---

[3] Courts construe the provisions contained under the PHRA consistent with its federal counterparts. *See Smith v. Comhar, Inc.*, No. 15-4913, 2017 U.S. Dist. LEXIS 33645, at *18 (E.D. Pa. 2017); *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1054 (Pa. Super. Ct. 2002). *See also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (analyzing the PHRA in conjunction with its federal counterparts).

of [her] job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on [her] disability." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). TalentBurst only disputes whether Plaintiff has established the third element. This element requires a "causal nexus between [the] disability" and the adverse employment action. *See Drummer v. Trustees of University of Pennsylvania*, 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017). "Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, No. 08-207, 2008 WL 2312671, at *4 (W.D. Pa. June 4, 2008)).

TalentBurst zeroes in on Plaintiff's allegation that she "could not comply with Infosys's vaccination policy to vaccinate its employees against COVID-19." (ECF No. 27-1 at 6 (citing ECF No. 1 at 4, 7 ¶¶ 23, 53–54).) Defendant argues that because "Plaintiff was offered an alternative accommodation to the vaccine requirement [this] belies the notion that Plaintiff's disability was a determinative factor in any decision to terminate." (*Id.*) However, TalentBurst ignores that another facet of Plaintiff's alleged disability is that she "is unable to reliably operate a car due to the medications that she takes to manage[] her disabilities." (ECF No. 1 at 5 ¶ 37.) Plaintiff alleges that the only accommodation that TalentBurst offered to her involved a hybrid work schedule and frequent COVID-19 testing instead of vaccination, requiring a commute to Vanguard's Malvern office. When Plaintiff could not accept the offer because of her disability and inability to drive, she avers that her contract with Defendants TalentBurst and Vanguard officially terminated. As

of [her] job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on [her] disability." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). TalentBurst only disputes whether Plaintiff has established the third element. This element requires a "causal nexus between [the] disability" and the adverse employment action. *See Drummer v. Trustees of University of Pennsylvania*, 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017). "Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, No. 08-207, 2008 WL 2312671, at *4 (W.D. Pa. June 4, 2008)).

TalentBurst zeroes in on Plaintiff's allegation that she "could not comply with Infosys's vaccination policy to vaccinate its employees against COVID-19." (ECF No. 27-1 at 6 (citing ECF No. 1 at 4, 7 ¶¶ 23, 53–54).) Defendant argues that because "Plaintiff was offered an alternative accommodation to the vaccine requirement [this] belies the notion that Plaintiff's disability was a determinative factor in any decision to terminate." (*Id.*) However, TalentBurst ignores that another facet of Plaintiff's alleged disability is that she "is unable to reliably operate a car due to the medications that she takes to manage[] her disabilities." (ECF No. 1 at 5 ¶ 37.) Plaintiff alleges that the only accommodation that TalentBurst offered to her involved a hybrid work schedule and frequent COVID-19 testing instead of vaccination, requiring a commute to Vanguard's Malvern office. When Plaintiff could not accept the offer because of her disability and inability to drive, she avers that her contract with Defendants TalentBurst and Vanguard officially terminated. As

such, Plaintiff has sufficiently alleged a causal connection between her termination and her disability.

### 2. Failure to Accommodate Claim

The elements of a discrimination claim and failure to accommodate claim are similar. "To state a failure to accommodate claim under the ADA, a plaintiff must allege: '(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" *Lucas v. City of Philadelphia*, No. 11-4376, 2013 WL 2156007, at *25 (E.D. Pa. May 17, 2013) (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009)). TalentBurst only disputes whether Plaintiff has established the third element. This element "can be satisfied by a showing either that the employer (1) refused to provide a proposed reasonable accommodation, or (2) failed to engage in an interactive process after a request for accommodation was made, though a reasonable accommodation was possible." *Id.* at *26 (citing *Solomon v. Sch. Dist. Of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012)). In addition, to succeed on a failure to accommodate claim, an "employee must 'make clear that the employee wants assistance for his or her disability.'" *Bowman v. St. Luke's Quakertown Hosp.*, No. 12-797, 2012 WL 6527402, at *4 (E.D. Pa. Dec. 13, 2012) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).

Plaintiff has sufficiently alleged a failure to accommodate claim. First, Plaintiff sufficiently alleged that TalentBurst refused to provide a reasonable accommodation. Plaintiff claims that TalentBurst only offered one accommodation, which would have required Plaintiff to work a

hybrid schedule; even though, Plaintiff alleges that TalentBurst was on notice that she could not drive. TalentBurst erroneously argues that "there are no allegations to suggest that Plaintiff sought an accommodation due [to] her alleged inability to drive." (ECF No. 27-1 at 9.) However, Plaintiff asserts that she sought to remain fully remote. Further, she alleges that she informed TalentBurst that she could not get to Malvern, PA to pick up a new laptop because she could not drive, meaning Plaintiff has alleged that TalentBurst reasonably knew that Plaintiff needed an accommodation for traveling, yet it did not offer any. Second, Plaintiff alleges that TalentBurst did not engage in an interactive process. Plaintiff contends that TalentBurst made one offer of a hybrid schedule and an alternative to being vaccinated for COVID-19. This allegation demonstrates an interactive process on Plaintiff's inability to be vaccinated. However, as pled, there are arguably no facts put forth that evidences TalentBurst engaging in an interactive process regarding Plaintiff's need for an accommodation to the hybrid work schedule. Instead of engaging in an interactive process, Plaintiff alleges that TalentBurst terminated her contract and/or Vanguard did not offer a new contract. Thus, the Court finds that Plaintiff has plausibly alleged a failure to accommodate claim.

### 3. Retaliation Claim

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the . . . protected activity; and (3) a causal connection between the . . . protected activity and the . . . adverse action." *Tielle v. Nutrition Grp.*, 810 F. App'x 160, 162 (3d Cir. 2020) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). At the prima facie stage, a plaintiff need only raise the inference that the protected activity was the likely reason for the adverse action. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). In its motion, TalentBurst argues that

Plaintiff failed to sufficiently allege retaliation claims because "Plaintiff has neither alleged sufficient facts to plausibly suggest that she engaged in protected activity related to a claimed disability nor that there is a causal connection between the alleged protected activity and the termination." (ECF No. 27-1 at 10.)

The Third Circuit has held that "requesting an accommodation in good faith is a protected activity." *Keiffer v. CPR Restoration & Cleaning Servs., LLC*, 733 Fed. Appx. 632, 638 n.26 (3d Cir. 2018) (citing *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003)). As the Court has elaborated on above, Plaintiff sufficiently alleges that she requested an accommodation in good faith. In further support of its argument, TalentBurst contends that "Plaintiff fails to plausibly establish an inference of retaliation because there are insufficient facts pled to suggest that TalentBurst subjected Plaintiff to any adverse employment action as a result of an alleged disability." (ECF No. 27-1 at 10.) Again, the Court held above that Plaintiff sufficiently pled a causal nexus between her termination and her disability.

TalentBurst argues that Plaintiff fails to "show a causal connection between her requested accommodation and her termination." (ECF No. 27-1 at 11.) The Third Circuit has articulated three options to establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, and as a third option, the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation. *Cooper v. Menges*, 541 Fed. Appx. 228, 232 (3d Cir. 2013) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Plaintiff has sufficiently alleged the requisite causal connection. Plaintiff avers that she was offered a new contract in January 2022, involving a hybrid work schedule and frequent COVID-19 testing instead of vaccination. Plaintiff has alleged that TalentBurst reasonably knew that Plaintiff needed an accommodation for commuting to work, yet it did not offer any. Instead, Plaintiff's contract officially terminated on January 11, 2022. These allegations are sufficient to demonstrate an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action. Therefore, the Court finds that Plaintiff has plausibly alleged a retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendants Infosys and Randstad's motions to dismiss. Infosys and Randstad are dismissed from this action without prejudice. The Court denies Defendants Vanguard and TalentBurst's motions to dismiss. At this time, Plaintiff's request for leave to amend her Complaint is denied. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

HODGE, KELLEY B., J.